**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTOINE ODOM,

      Petitioner,               Civil No. 5:09-11197
                                  HONORABLE JOHN CORBETT O'MEARA
v.                              UNITED STATES DISTRICT JUDGE

GARY CAPELLO,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Antoine Odom, ("Petitioner"), presently confined at the Baraga Maximum

Correctional Facility in Baraga, Michigan, seeks the issuance of a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his

conviction for three counts of assault on a prison employee by an inmate, M.C.L.A.

750.197c; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons

stated below, the application for writ of habeas corpus is **DENIED.**

### I. Background

      Petitioner was convicted of the above charges following a jury trial in the Jackson

County Circuit Court. This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

Sergeant Katoshia Watson testified that on December 12, 2004, she was working as "yard sergeant ... responsible for yard activities and the chow lines, among other activities" at the Charles Egeler Reception and Guidance Center in Jackson, Michigan. Sergeant Watson testified that during meals, officers try to discourage the inmates from talking while in the food line.

Sergeant Watson testified that while Odom was moving through the food line he "stated that he had a problem with a particular officer ... related to a ticket" that he had received. Odom testified that he was trying to talk to Sergeant Watson regarding an incident that had occurred on December 10, 2004, in which his cell was "ransacked." Sergeant Watson testified that she responded by telling Odom that she "had over 300 more inmates that needed to be fed" and that Odom was holding up her line. She told Odom that she would talk to him when she had time. Odom stated that Watson was responsible for handling his complaint about the incident because "she was working that block the day the incident occurred." Sergeant Watson testified that Odom "was not exactly happy" to hear her answer to his request to talk to her. Sergeant Watson said that Odom "brawned up" and his voice level went up as if he were very angry. Sergeant Watson said that she was concerned about things escalating, so she alerted an officer "to be mindful of this particular inmate" and allowed Odom to eat his meal. After Odom ate, Sergeant Watson asked another officer to get Odom and bring him over to talk to her. After discussing Odom's complaint, Sergeant Watson indicated that there was nothing she could do for him. Sergeant Watson testified that Odom was upset, and as he walked away, he started to get loud and attempted to involve the other inmates. Sergeant Watson said that the other inmates started egging Odom on. Sergeant Watson testified that at that time, she told Officer Kenneth Ellis to handcuff Odom.

Sergeant Watson testified that at first she thought Odom was going to comply with the cuffing, but instead Odom punched her in the face. Several officers confirmed that they saw Odom strike Sergeant Watson. Sergeant Watson testified that Odom also spat in her face twice. She said that Odom "kept coming at her" and that Officer Ellis tried to assist but "it was pretty hard for [the two of them] to even handle him." She stated that "probably about seven" officers were needed to get Odom under control. Sergeant Watson testified that "an officer applied a pressure point" to Odom and held him down, and eventually Odom was carried to the segregation unit by eight officers. Sergeant Watson said that she then removed herself from the situation, as is required by policy. Sergeant Watson testified that she was later informed by medical personnel that Odom was HIV positive (infected with the human

immunodeficiency virus) and had hepatitis B. Odom denied hitting or spitting on Sergeant Watson.

Officer Michael Marsh testified that after he saw Odom hit Sergeant Watson he went toward Odom and then Odom punched him in the mouth. Corrections Officer Steven McCrum testified that he saw Odom strike Officer Marsh in the face. Odom denied punching anybody in the mouth.

Officer Douglas Culler testified that he helped carry Odom from the cafeteria. Officer Culler testified that as he was getting Odom out of the cafeteria he noticed that Odom "appeared to be bleeding out of the corner of his mouth." Officer Culler testified that while carrying Odom into the segregation cell, Odom spit in his face. Officer Culler testified that he then after had to receive a mixture of several drugs to protect against possible HIV exposure. Odom denied spitting at Officer Culler.

*People v. Odom,* 276 Mich. App. 407, 409-11; 740 N.W. 2d 557 (2007).

Petitioner's conviction was affirmed on appeal. *Id., reh. den.* No. 267867

(Mich.Ct.App. September 19, 2007); *lv. den.* 480 Mich. 1141; 746 N.W. 2d 100 (2008);

*reconsideration. den.* 481 Mich. 881; 748 N.W. 2d 809 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court improperly scored Offense Variable 1 under the Michigan Sentencing Guidelines and counsel was ineffective for failing to object to the guidelines scoring.

II. Prosecutorial misconduct.

III. Ineffective assistance of trial counsel.

IV. Insufficient evidence to sustain a finding of guilt beyond a reasonable doubt.

V. Violation of petitioner's right to self-representation.

VI. Disclosure of petitioner's HIV status violated petitioner's constitutional rights.

VII.  Violation of right to confront witnesses at trial.

VIII.  Violation of right to an impartial tribunal. [1]

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

---

[1]  Due to the brevity of the petition for writ of habeas corpus, this Court is willing to incorporate the arguments raised in petitioner's state appellate court brief and his *pro per* supplemental brief [See Dkt. 9-11], which he refers to in his habeas application, as being part of petitioner's application for writ of habeas corpus. *See e.g. Burns v. Lafler,* 328 F. Supp. 2d 711, 717, n. 2. (E.D. Mich. 2004).

federal law erroneously or incorrectly." *Id.* at 410-11.

## III.  Discussion

### A.  The renewed motion to prepare the transcripts and the appellate record.

Petitioner previously filed a motion in which he asked this Court to order the prosecutor to prepare transcripts and copies of his appeal briefs from his state court files, so he could file a post-conviction appeal in the state courts or file additional pleadings in this Court.  On February 18, 2010, this Court denied the motion. *See Odom v. Capello,* 2010 WL 582784 (E.D. Mich. February 18, 2010).  Petitioner has now filed a motion to amend and supplemental pleadings [Dkt. # 13] and a second motion for production of transcripts [Dkt. # 14], in which he again asks this Court to order respondent to provide him with the trial transcripts and appellate court record.

The Court will deny petitioner's renewed motion for transcripts, because petitioner has once again failed to show why these appellate briefs or transcripts are needed for him to prepare either a post-conviction appeal in the state courts or to prepare pleadings in his federal habeas proceeding.  A "blanket and noncommittal request" for documents by a habeas petitioner is insufficient to enable a federal court to make a determination of necessity pursuant to § 2250. *See Cassidy v. United States,* 304 F. Supp. 864, 867 (E.D Mo. 1969); *See also Morton v. Warren,* No. 2008 WL 4386840, * 5 (E.D. Mich. September 24, 2008); *See also United States v. Chambers,* 788 F. Supp. 334, 338 (E.D. Mich. 1992)(federal criminal defendant not entitled to production of trial transcripts on his "bald assertion" that he needed them to prepare § 2255 post-conviction

motion to vacate sentence). In light of the conclusory nature of petitioner's motion for the production of the transcripts from his state court case, the renewed motion for production of the transcripts is denied. *Id.*

**B. Claim # 1. The sentencing guidelines/ineffective assistance of counsel at sentencing claim.**

Petitioner first claims that the trial court improperly scored 20 points for offense variable (OV) 1 of the Michigan Sentencing Guidelines, based on petitioner spitting his HIV-positive blood on a corrections officer. Petitioner further claims that counsel was ineffective for failing to object to the scoring of OV 1.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *See also Adams v. Burt,* 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007). Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009); *Payne v. Smith,* 207 F. Supp. 2d 627, 640 (E.D. Mich. 2002). Petitioner's claim that the sentencing guidelines were incorrectly scored thus fails to state a claim upon which habeas relief can be granted. *Cook v. Stegall,* 56 F. Supp. 2d at 797.

Petitioner further claims that his trial counsel was ineffective at sentencing for failing to object to the scoring of the sentencing guidelines.

Although the Supreme Court has never expressly extended *Strickland v. Washington,* 466 U.S. 668 (1984) to noncapital sentencing cases, the Sixth Circuit has applied it in that context with regards to reviewing federal convictions on direct appeal. *See United States v. Stevens*, 851 F. 2d 140, 145 (6th Cir. 1988). However, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub,* 299 F. 3d 570, 578-579 (6th Cir. 2002). The Ninth Circuit has noted, "[W]hen the Supreme Court established the test for ineffective assistance of counsel claims in *Strickland*, the [Supreme] Court expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F. 3d 1236, 1244 & n. 39 (9th Cir. 2005)(*quoting Strickland,* 466 U.S. at 686). Because the Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context, there is no clearly established federal law regarding ineffective assistance of counsel claims in noncapital sentencing cases, so as to provide petitioner with a basis for habeas relief on his claim. *Id., See also Davis v. Grigas,* 443 F. 3d 1155, 1158 (9th Cir. 2006).

In any event, assuming that *Strickland* applies to noncapital sentencings, petitioner is unable to show that counsel acted deficiently in failing to object to the scoring of OV 1, because petitioner has failed to establish that the sentencing guidelines

7

were improperly scored under Michigan law. The Michigan Court of Appeals held that the trial court properly scored 20 points under OV 1, based on petitioner's act of spitting his HIV-positive blood on a corrections officer. In so ruling, the Michigan Court of Appeals concluded that HIV-infected blood qualified as a "harmful biological substance" under OV 1, since it was a substance produced by a human organism that contained a virus that could spread or cause disease in humans. *People v. Odom,* 276 Mich. App. at 411-13.

In light of the fact that the Michigan Court of Appeals determined that OV 1 of the Michigan Sentencing Guidelines was correctly scored, petitioner has failed to show that counsel was deficient for failing to object to the scoring of OV 1. Because petitioner has failed to show that his counsel acted deficiently with respect to the scoring of the guidelines, petitioner is not entitled to habeas relief on his claim. *See Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 911 (E.D. Mich. 2006).

## C. Claim # 2. The prosecutorial misconduct claims.

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-

56 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Id.*

Petitioner first contends that the prosecutor offered unsworn testimony during the questioning of Sergeant Watson.  In response to Sergeant Watson's testimony that petitioner"brawned up," the prosecutor asked Sergeant Watson what she meant by that, asking "You mean, he kind of, what, stands up straight and, kind of spreads himself out a little?"  The Michigan Court of Appeals concluded that the prosecutor's remark was a reasonable question prompted by, and in direct response to, Sergeant Watson's testimony and was only a request for a clarification. *Odom,* 276 Mich. App. at 414.  A prosecutor does not unduly inject himself into the proceedings or offer unsworn testimony by asking a witness to clarify his or her response to an appropriate question. *See U.S. v. Gholston,* 10 F. 3d 384, 389 (6th Cir. 1993).  The prosecutor's question was not improper.

The Court will discuss petitioner's next two prosecutorial misconduct claims together because they are of a similar nature.  Petitioner first claims that the prosecutor engaged in misconduct when he did not ask a witness to fully explain what a "Critical Incident Report" was or what its various parts contained.  In rejecting this claim, the Michigan Court of Appeals observed that petitioner failed to explain how this alleged

failure prejudiced his right to a fair trial. *Odom,* 276 Mich. App. at 414. Petitioner further claimed that the prosecutor engaged in misconduct by not conceding at trial that petitioner's reference to a letter that he had sent to a person named "Kabob" was meant to be a reference to a letter that petitioner had sent to a person named "Kabot," which is the prosecutor's name. In rejecting this claim, the Michigan Court of Appeals noted that petitioner himself failed to clarify this fact despite the prosecutor's direct question to petitioner, in which he was asked who "Kabob" was. *Id.*

The prosecutor's questions or the responses to these questions with respect to these issues was neither misleading or prejudicial. Accordingly, the prosecutor did not engage in prosecutorial misconduct. *See U.S. v. Blood*, 435 F. 3d 612, 628 (6th Cir. 2006).

Petitioner finally claims that the prosecutor improperly asked petitioner to comment regarding the truthfulness of other witnesses. In rejecting this claim, the Michigan Court of Appeals indicated that the record did not show that the prosecutor ever asked petitioner to comment on other witnesses' truthfulness. *Odom,* 276 Mich. at 414. Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004). Because petitioner's final prosecutorial misconduct claim is conclusory or unsupported, he is not entitled to habeas relief.

### D. Claim # 3. The ineffective assistance of counsel claims.

Petitioner next contends that he was deprived of the effective assistance of

counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner first claims that his counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges in Claim # 2, *supra.* Petitioner cannot show that counsel was ineffective for failing to object to the prosecutor's questions, in light of the fact that the Michigan Court of Appeals found on direct appeal that the questions were not improper. *See Finkes v. Timmerman-Cooper,* 159 Fed. Appx. 604, 611 (6th Cir. 2005). Because the prosecutor's conduct was not improper, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

Petitioner next claims that his trial counsel was ineffective for failing to make an initial opening statement. Although defense counsel did not make an opening statement after the prosecutor's opening statement, he did make an opening statement right after the prosecution rested and before calling witnesses to testify for the defense.

"The timing of an opening statement, and even the decision whether to make one

at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel." *Millender v. Adams*, 187 F.Supp.2d 852, 870 (E.D. Mich. 2002)*(quoting United States v. Rodriguez-Ramirez*, 777 F. 2d 454, 457 (9th Cir. 1985)). Petitioner is not entitled to relief because he has failed to show how he was prejudiced by counsel's failure to make an opening statement until after the prosecution had rested. *See e.g. Moss v. Hofbauer,* 286 F. 3d 851, 864 (6th Cir. 2002)(counsel not ineffective for failing to make opening statement, where the petitioner failed to articulate how the absence of an opening statement prejudiced him).

Petitioner next contends that counsel was ineffective for failing to object to false testimony that petitioner claims was given by various witnesses. In rejecting this claim, the Michigan Court of Appeals noted that "one cannot object simply because one thinks a witness is lying. The veracity of a witness is a matter for the trier of fact to discern." *Odom,* 276 Mich. App. at 416 and n. 22( *citing People v. Lemmon*, 456 Mich. 625, 637, 576 N.W.2d 129 (1998)).

In the present case, other than his own self-serving statements, petitioner has failed to show that the prosecutor's witnesses testified falsely, thus, his counsel's failure to object to such testimony does not constitute ineffective assistance of counsel. *See Davis v. Burt,* 100 Fed. Appx. 340, 346 (6th Cir. 2004).

Petitioner next claims that his defense counsel was ineffective for failing to properly investigate his case or prepare for trial because defense counsel did not meet with petitioner before the preliminary hearing, did not go to the prison, and did not make

any effort to locate and talk to any other inmate witnesses. In rejecting this claim, the

Michigan Court of Appeals noted that these alleged deficiencies were not apparent from

the existing record and would not be reviewed by the court. *Odom,* 276 Mich. App. at

417. The Michigan Court of Appeals had previously indicated that because petitioner

had made no request for an evidentiary hearing or a motion for a new trial, their review

of petitioner's ineffective assistance of counsel claims would be limited to the existing

record. *Id.* at 415.

Because petitioner failed to present any evidence in a proper manner to the

Michigan courts to support these ineffective assistance of counsel claims, petitioner is

not entitled to an evidentiary hearing to further develop these claims in his habeas

proceeding. *See Cooey v. Coyle,* 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. §

2254(e)(2)(A)(ii)). Because there is nothing on the record to support these allegations of

ineffective assistance of counsel, petitioner is not entitled to habeas relief on these

claims.

Petitioner next alleges that his counsel was ineffective for not pleading

self-defense. In rejecting this claim, the Michigan Court of Appeals noted that petitioner

testified at trial that he never assaulted anyone, therefore, petitioner's testimony ran

contrary to a self-defense claim. *Odom,* 276 Mich. App. At 417.

Under Michigan law, "[a] finding that a defendant acted in justifiable self-defense

necessarily requires a finding that the defendant acted intentionally but that the

circumstances justified his actions." *Taylor v. Withrow,* 288 F. 3d 846, 853 (6th Cir.

2002)(*quoting People v. Heflin*, 434 Mich. 482, 456 N.W.2d 10, 19 (1990)).  In light of

the fact that petitioner testified that he did not assault any of the guards, counsel's

decision to pursue an innocence defense instead of a self-defense claim was a reasonable

trial strategy that would defeat petitioner's ineffective assistance of counsel claim. *See*

*e.g. Poindexter v. Mitchell,* 454 F. 3d 564, 573-75 (6th Cir. 2006)(counsel was not

deficient in failing to pursue of "heat of passion" defense, in light of the fact that such a

defense would have been inconsistent with petitioner's continued insistence that he had

no involvement in the crime).

Petitioner finally claims that counsel was ineffective for failing to request a

change of venue, in light of the fact that Jackson County contained a large number of

people who knew or were related to corrections officers, and would therefore have a bias

in favor of the corrections officers' testimony.  The Michigan Court of Appeals noted

that the trial court asked the pool of prospective jurors if any of them had friends or

family who worked for the Michigan Department of Corrections and everyone who said

they had a close connection to someone who worked in a prison was eliminated from the

jury.  Because this was an effective means of dealing with the possible risk of bias,

counsel was not ineffective for failing to request a change of venue. *Odom,* 276 Mich.

App. at 417.  Because the trial judge conducted a thorough *voir dire* and the jurors as

seated exhibited no bias, counsel was not ineffective for failing to move for a change of

venue. *See e.g. Chegwidden v. Kapture,* 92 Fed. Appx. 309, 311 (6th Cir. 2004).

Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

**E. Claim # 4.  The sufficiency of evidence claim.**

Petitioner next claims that there was insufficient evidence to convict him of these crimes because the officers lied.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Moreover, in reviewing a state court's application of the *Jackson* standard, a federal habeas court is required to determine whether the state court's application of the law in reviewing a sufficiency of evidence claim was reasonable. *See Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008); *cert. den.* 130 S. Ct. 109 (2009)(citing 28 U.S.C. § 2254(d)(1)).  Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge,* 190 F. Supp. 2d 974, 985 (E.D. Mich. 2002)(internal citations omitted).

Under Michigan law, "[A] person lawfully imprisoned in a ... place of confinement established by law for any term, ... who, ... through the use of violence, threats of violence or dangerous weapons, assaults an employee of the place of confinement ... knowing the person to be an employee"... is guilty of assaulting a prison employee. *Odom,* 276 Mich. App. at 418 (*quoting* M.C.L.A. 750.197c).

In rejecting petitioner's claim, the Michigan Court of Appeals noted that there

was no dispute that the officers in this case were employees of the Department of Corrections or that petitioner was lawfully incarcerated at the time of the assaults. The Michigan Court of Appeals further noted that there was testimony from multiple witnesses that petitioner punched two of the corrections officers in the face and spat at a third. The Michigan Court of Appeals concluded that this evidence was sufficient to establish the elements of assault upon a prison employee. *Odom,* 276 Mich. App. at 418. This Court agrees that this evidence was sufficient for a rational trier of fact to find petitioner guilty of three counts of assault on a prison employee.

To the extent that petitioner claims that the witnesses were not credible, he would not be entitled to relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). Petitioner's insufficiency of evidence claim rests on an allegation of the victim's credibility, which is the province of the jury. Petitioner is therefore not entitled to habeas relief on this claim. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

**F. Claim # 5. The self-representation claim.**

Petitioner next contends that he was denied his Sixth Amendment right of self-representation.

In rejecting petitioner's claim, the Michigan Court of Appeals observed that

16

petitioner never requested to represent himself at trial, therefore, there was no violation of his right to self-representation. *Odom,* 276 Mich. App. at 419.

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). However, the right to self-representation is not absolute. *Martinez*, 528 U.S. at 161. A defendant's request for self-representation must be made clearly and unequivocally. *See United States v. Collins*, 129 Fed. Appx. 213, 217 (6th Cir. 2005)(*citing Faretta*, 422 U.S. at 835). In addition, a defendant's invocation of his right of self-representation must be timely made. *See e.g. Moore v. Haviland,* 531 F. 3d 393, 403 (6th Cir. 2008).

The Michigan Court of Appeals rejected petitioner's claim, on the ground that there was nothing in the court record to indicate that petitioner had ever invoked his right to self-representation. In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001)(*citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). The question of whether a habeas petitioner invoked his right to self-representation in state court is a question of

fact that is entitled to the presumption of correctness on federal habeas review of a state court conviction. *See Fields v. Murray*, 49 F. 3d 1024, 1032 (4th Cir. 1995). Petitioner has offered no evidence to rebut the Michigan Court of Appeals' finding that he never invoked his right to self-representation. Accordingly, he is not entitled to relief on his claim.

### G. Claim # 6. The disclosure of petitioner's HIV status.

Petitioner next contends that the state court violated Michigan law by allowing his HIV status to be disclosed at trial.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Bridinger,* 429 F. Supp. 2d at 908-09. "There is no specific constitutional right prohibiting disclosure of a person's HIV status at trial." *Tokar v. Bowersox*, 1 F. Supp. 2d 986, 1004 (E.D. Mo. 1998). Accordingly, petitioner is not entitled to habeas relief on his claim.

### H. Claim # 7. The Confrontation Clause claim.

Petitioner next alleges that his Confrontation Clause rights were violated when the

18

trial court permitted Sergeant Watson, who did not testify during the preliminary examination, to testify at trial.

There is no Confrontation Clause problem when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *See also Crawford v. Washington,* 541 U.S. 36, 59, n. 9 (2004); *U.S. v. Mayberry*, 540 F. 3d 506, 516 (6th Cir. 2008). Moreover, there is no right to confront witnesses at a preliminary hearing before being required to stand trial. *See Peterson v. California,* 604 F. 3d 1166, 1170 (9th Cir. 2010). Even if a criminal defendant is not given a preliminary hearing, he is not denied the constitutional right to confront his witnesses, as long as he is able to confront them in open court at trial. *See Green v. Bomar*, 329 F. 2d 796, 797 (6th Cir. 1964); *vacated on other grds,* 379 U.S. 358 (1965); *See also U.S. v. Mulligan,* 520 F. 2d 1327, 1329-30 (6th Cir. 1975)(continuance of preliminary examination to date some 11 days following arrest, at which time New York complaint was dismissed because of return of Michigan indictment, did not deny defendants their Sixth Amendment right of confrontation, on ground that they were unable to cross-examine key government witness prior to trial). The Ninth Circuit notes that "the United States Supreme Court has repeatedly stated that the right to confrontation is basically a trial right." *Peterson,* 604 F. 3d at 1169 (*quoting Pennsylvania v. Ritchie,* 480 U.S. 39, 52 (1987) (holding that "the right to confrontation is a trial right" and "[n]ormally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses"); *California v. Green,* 399

U.S. 149, 157 (1970) ("[I]t is th[e] literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause[.]"). Because petitioner was able to cross-examine Sergeant Watson at trial, the failure to produce her at the preliminary examination did not violate petitioner's confrontation rights.

### I.  Claim # 8.  Judicial bias claim.

Petitioner lastly contends that he was deprived of a fair and impartial tribunal because of judicial bias.

In rejecting this claim, the Michigan Court of Appeals pointed to petitioner's complaint that the trial judge was biased against him based primarily on his treatment during a preliminary hearing.  The Michigan Court of Appeals noted that during this hearing, petitioner continually interrupted both the trial judge and his own attorney, and argued several times with the trial judge, prompting the judge to finally warn petitioner to "act decently" or he would "sit next door and watch [the trial] on TV."  The Michigan Court of Appeals concluded that nothing that petitioner complained of demonstrated any bias on the part of the trial judge "and, to the contrary, demonstrates that the trial court acted with some degree of patience with Odom's outbursts in court." *Odom,* 276 Mich. App. at 422.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).  However, to

state a claim that a judge is biased, a defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. *United States v. Lowe*, 106 F. 3d 1498, 1504 (6th Cir. 1997). "Under this standard, '[o]nly in the most extreme of cases would disqualification on the basis of bias and prejudice be constitutionally required.'" *Getsy v. Mitchell,* 495 F.3d 295, 311 (6th Cir.2007)(*quoting Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir.2006)). The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.* A judge is required to recuse himself or herself only where he has actual bias or "a predisposition 'so extreme as to display clear inability to render fair judgment.'" *Johnson v. Bagley,* 544 F. 3d 592, 597 (6th Cir. 2008)(*quoting Liteky*, 510 U.S. at 551). In reviewing a judicial bias claim, a federal habeas court should employ the initial presumption that the assigned trial judge properly discharged his or her official duties. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

In the present case, the trial judge's admonishments to petitioner following his courtroom outbursts did not demonstrate judicial bias, because these remarks were made by the judge in the course of ordinary courtroom administration and proceedings and while attempting to control the decorum of the courtoom. *See U.S. v. Kimball,* 73 F. 3d 269, 273 (10th Cir. 1995). Petitioner is not entitled to habeas relief on his eighth and

final claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

# V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*


s/John Corbett O'Meara
United States District Judge


Date:  August 24, 2010




I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, August 24, 2010, using the ECF system and/or ordinary mail.


s/William Barkholz
Case Manager